IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | CASE NO.   1:19-CR-367 |
| : | |
| SEAN MICHAEL MCLAUGHLIN : | |
| : | |
| Accused. : | |

**DEFENDANT'S REPLY TO GOVERNMENT'S CLOSING ARGUMENTS**

Just as it did at trial, the Government has expended considerable time and resources describing the names, structure, and dates of files recovered from the two devices in an effort to convey the appearance of overwhelming evidence of receipt and possession. But just as it did during trial, the Government entirely ignores the critical cross-examination testimony of its computer forensic expert, Dianne Leveille, which eviscerated its attempt at proving both charges beyond a reasonable doubt. Nothing in the Government's closing arguments undoes the damage to the Government's case. For that reason, the Court should find Mr. McLaughlin not guilty of both charges.

**I. The Government Failed to Prove Receipt or Attempted Receipt.**

The Government has failed to prove the more serious of the two charges at issue: receipt or attempted receipt of child pornography. First, the Government relies solely on Ms. Leveille's direct examination while ignoring her cross-examination in which she provided crucial testimony that entirely undermined the Government's case on the receipt or attempted receipt charge. Second, the authorities relied upon by the Government in support of its argument that it met its burden of proof on the receipt or attempted receipt charge are inapposite, because none of those cases suffered from the primary deficiency in the Government's case here: lack of credible proof

1

from its forensic expert that the Known Images were downloaded or attempted to be downloaded *from the internet*.  <u>Third</u>, the Government's arguments in support of the "attempted receipt" charge are similarly unavailing, because those arguments likewise rely on the Court ignoring the cross-examination of Ms. Leveille and her clear testimony that she cannot say that the forensic artifacts she recovered are due to attempted downloads *from the internet*.  The Government's effort to prove "attempted receipt" ultimately suffers from the same frailties as its futile effort to prove "receipt" over the internet of the Known Images.

    **A. The Government's Detailed Retelling of Ms. Leveille's Direct Examination Does Nothing to Cure the Substantial Weaknesses in Its Proof that the Known Images Were Downloaded or Attempted to be Downloaded from the Internet.**

While dedicating approximately 22 pages of its closing arguments to explaining how it proved receipt and attempted receipt, the Government tellingly expended a single paragraph on the most contested issue at trial—namely, whether the Government proved beyond a reasonable doubt that the files in question were downloaded from the internet, which the Government must prove to support the "receipt" or attempted receipt charge.  And in that single paragraph on page 22 of its brief, the Government does little beyond providing conclusory statements about how "the United States has presented overwhelming evidence that the defendant used the internet to search for and download child pornography."

    The only way the Court can countenance this conclusion is by ignoring the entirety of the cross-examination of Ms. Leveille, in which she repeatedly, consistently, and unequivocally told this Court that she cannot say to a reasonable degree of certainty whether the files and forensic artifacts at issue resulted from the use of the internet, or instead from the manual transfer of files from any number of external drives, or even from the transfer of files *within* the same device.  Trial Transcript, at 104.  Counsel will not endeavor to repeat and recite the extensive portions of Ms.

2

Leveille's testimony in this regard, all of which was addressed in depth in Mr. McLaughlin's closing arguments.

Needless to say, this testimony by Ms. Leveille, which the Government notably did nothing to counter during redirect, is alone fatal to the Government's ability to prove the receipt charge beyond a reasonable doubt. The Government has presented this Court with no alternative theory on which the evidence "overwhelmingly" proves that the Known Images and related artifacts were "received" within the meaning of 18 U.S.C. 2252(a)(2), other than through internet use. *See* Dkt. # 80, Government Closing Statement, p. 22. So, when its own expert says that she cannot conclude that the forensic artifacts are *more* consistent with internet use than movement of the files without use of the internet, let alone beyond a reasonable doubt, the Government cannot possibly be said to have met its burden of proof on the receipt charge.

The Government's detailed and methodical closing arguments convey the appearance of a tidy and airtight case of receipt of child pornography using a means of interstate commerce, namely the internet. But in reality, the Government's arguments rely on the Court only considering Ms. Leveille's direct examination and entirely ignoring her cross-examination. But no amount of detailed retelling of Ms. Leveille's direct examination, and no amount of restating of the Government's view of the forensic evidence, can undo or erase those crucial admissions by the Government's own expert witness.

**B. The Authorities Cited by the Government are Inapposite. None of them Involve an Expert Witness Explicitly Conceding that the Forensic Artifacts Could Have Resulted Without any Use of the Internet.**

None of the authorities the Government cites involve a case in which the Government's own forensic expert could not testify to a reasonable degree of certainty that the files in question were indeed downloaded from the internet. In fact, Ms. Leveille did not and could not even testify

that it was *more likely* that the files were downloaded from the internet, let alone to a reasonable degree of certainty.

The Government's reliance on the case of *United States v. Pawlak*, 935 F.3d 337 (5th Cir. 2019) is misplaced. There, the Government's proof of "receipt" using the internet relied upon temporary *internet* cache files containing child pornography, which the Fifth Circuit concluded was sufficient to prove receipt over the internet. *Id.* at 350. Here, on the other hand, despite presenting numerous exhibits to the Court, the Government has presented no evidence of web browser activity or files in the temporary internet cache that make it more likely, let alone provable beyond a reasonable doubt, that the Known Images admitted into evidence originated from the internet.

Nor does the case of *United States v. Schaff*, 454 F. App'x 880 (11th Cir. 2012) support the Government's futile efforts to prove internet receipt. Unlike in this case, where the Government's forensic expert admittedly did nothing to corroborate whether the files originated online or elsewhere, the Government in *Schaff* presented specific evidence that the visual depictions had originated in other states, and, therefore, had to have traveled across state lines through the internet to reach the defendant. *Id.* at 882 ("the government was able to establish that some of the child pornography had been created in Illinois and Florida. To reach Schaff's computers in Georgia, those images necessarily had to cross state lines."). Nothing in the record before this Court comes close to such proof beyond a reasonable doubt that the visual depictions either originated outside of Virginia or traveled over the internet.

And while the Government is correct that the Fourth Circuit has held that "use of the internet in transmission of child pornography satisfies the interstate commerce element of the offense," it has pointed to nothing in the record here that explains away Ms. Leveille's inability to

4

say to a reasonable degree of certainty that the visual depictions here did in fact involve use of the internet.

Indeed, not only does the Court not have sufficient evidence to conclude beyond a reasonable doubt that the Known Images traveled over the internet, but the Court also does not have before it evidence beyond a reasonable doubt that the Known Images were "received" at all from any outside source, person, entity, or location. That is because there is simply no evidence regarding the existence or source of any external devices that Ms. Leveille conceded could have been the source of all the forensic artifacts at issue. The Government basically asks this Court to speculate and fill in those gaps in its evidence, but nothing in the cases it cites permits the Court to do so.

Ms. Leveille also testified that the forensic artifacts, including the LNK files, do not tell us whether the visual depictions originated (1) from the internet, (2) from an external drive, or (3) "some other transfer of files *within the system*." Trial Transcript, at 104. She also testified that this conclusion applies equally to the files recovered from the recycle bin. *Id.* at 104-105. Given her inability to state to a reasonable degree of certainty that the Known Images originated from an "outside source," let alone to identify that outside source, the Court cannot find Mr. McLaughlin guilty of "receipt" of child pornography.

### C. The Government Failed to Prove Attempted Receipt of Child Pornography.

As with its arguments regarding the receipt charge, the Government's arguments regarding the attempted receipt charge require the Court to ignore Ms. Leveille's testimony on cross-examination. There, she testified that the artifacts related to the alleged "search terms," the "search results", and the incomplete and complete files could have been transferred to the devices *without use of the internet*, and she could not tell the Court based on her evaluation that these were in fact

5

searches conducted through Shareaza (versus files and artifacts transferred over via an external drive of unknown origin). The Government can use the terms "search" and "download" over and over again, but it cannot ask this Court to ignore the facts in evidence, including its own expert's testimony that she cannot confirm that the files and artifacts in question are the result of internet searches and downloads.

The Government argues that the "search terms" and "search results" are evidence of a culpable intent, while evidence "that he initiated the process of downloading what he knew was a child pornography file" provides the "substantial step" necessary to support the inchoate offense of attempting to receive child pornography. The problem with this argument is that it is conclusory in nature and divorced from Ms. Leveille's testimony, the sum and substance of which is that the Court cannot actually conclude with reasonable certainty that the data files described as "search terms" and "search results" are in fact search terms and results, or that the partial files are indeed partial "downloads" from the internet. Regarding the former, Ms. Leveille testified that "you can transfer those data files manually from another drive to the destination on the C drive that would result in the same artifacts" that she recovered. Trial Transcript, at 98. And regarding the latter, Ms. Leveille testified that she cannot exclude the possibility that the partial files were not internet downloads but were instead partial files transferred from elsewhere. *Id.* at 102-103.

Therefore, since there is no challenge to this testimony, it must be credited. Despite the Government's demands, the Court cannot conclude that what it has in Government Exhibits 6-3C and 6-3D are indeed "search terms" and "search results" in Shareaza, or that incomplete files admitted into evidence resulted from an "attempt" to use the internet to download child pornography (versus an attempt to move files from one device to another without the use of any tool of interstate commerce). As such, just as the Government has failed to prove receipt of child

6

pornography over the internet, it has likewise failed to prove attempted receipt based on the same forensic evidence that stands in equipoise between possibly suggesting internet use and possibly suggesting manual movement of files of unknown origin, from an unknown source, from within the system or from an outside source without the use of the internet.

Accordingly, the Government has not proven attempted receipt of child pornography beyond a reasonable doubt.

**II. The Government Failed to Provide Sufficient and Reliable Attribution Evidence Regarding the Known Images, or to Prove Knowing Possession of Child Pornography.**

The Government's arguments that the attribution evidence points unerringly to Sean McLaughlin ignores its own expert's testimony. First, the Government presented no evidence regarding attribution during its direct examination of Ms. Leveille, other than the fact that the username in question is "seanm_000." When asked about this on cross-examination, after testifying that part of her job is to evaluate attribution evidence on each device she evaluates, she conceded that "the extent of the attribution evidence that we've been provided at this point" in the trial basically consists of the fact that the username is "seanm_000." Trial Transcript, at 118. When asked if she looked for attribution evidence aside from user names, such as "documents, downloads, searches, [and] things tied to the name of another individual other than Sean McLaughlin," she said: "I expect I did" but that she did not recall. *Id.* at 119. It was abundantly clear from her testimony that the issue of attribution evidence was, at best, an afterthought.[1]

---

[1] Ms. Leveille testified similarly as to the laptop, stating she did not recall if she searched for attribution evidence and testifying that the name "Walter Hodges" "sounds familiar" but that she never compared the attribution evidence pointing to Walter Hodges to that pointing to Sean McLaughlin. *Id.* at 127; 130.

What is more, when asked if she could have attempted to create a timeline to compare activity arguably attributable to Walter Hodges versus that attributable to Mr. McLaughlin, she conceded that she could have but never did so. *Id.* at 122-123. Nonetheless, she agreed on cross-examination that the dates of the documents attributable to Walter Hodges on the laptop "coincide[d] with the dates of a lot of the exhibits that" the Government introduced into evidence on direct examination, meaning files containing child pornography. *Id.* at 130. Aside from the conclusory statement on redirect that there was "a lot" of activity tied to Sean McLaughlin on the devices, at no point did Ms. Leveille testify that the attribution evidence was more consistent with Sean McLaughlin being behind the keyboard at the relevant dates and times than Mr. Hodges, or anyone else.

Second, the Government's argument that the only document naming Mr. Hodges on the tablet is the single file identified in Defense Exhibit 6-4A(3) misses the point. The bottom line is that Ms. Leveille never spent the necessary time or effort to actually search for, categorize, and evaluate the full extent of the attribution evidence:

> Q. And did you go through any of the documents – or these are the ones with obvious names tying these documents to someone else. But did you go through any of the other documents that had sort of generic names to determine if these are attributable to Sean McLaughlin versus Walter Hodges or James Hodges?
>
> A. I did not go through all the documents I found on the device.

*Id.* at 130. In other words, the Government cannot be permitted to argue that there is minimal evidence pointing to Walter Hodges when its own expert failed to expend the time and effort to actually reach that type of conclusion to a reasonable degree of certainty and based on a fair and complete review of the evidence, rather than a cursory and incomplete evaluation.

Third, the Government's belated attempt in its closing arguments to tie the child pornography activity to Sean McLaughlin misses the mark. This attempted timeline fails because

8

it relies on the accuracy of the dates and times reflected in the reports produced by Ms. Leveille. However, Ms. Leveille's testimony made it clear that those dates and times are only as accurate as the computer clock and calendar of the device at the time of the relevant computer activity, which she did nothing to confirm. She could have done so but never did:

> Q All right. Now, you've testified a bit about creation and modification dates and different settings. Let me just ask you a general question about that: When we're talking about creation dates and modification dates, those are pulled by the computer from the computer clock and calendar, correct?
>
> A Yes.
>
> Q So if my computer, for whatever reason, is set to the wrong date or the wrong time, those inaccurate dates are going to be reflected in the artifacts that you're pulling indicating creation dates and modification dates and times?
>
> A Yes.
>
> Q And if I change it later on so that it's accurate or inaccurate but it's a different date and time, then you're going to have a new set of dates and times, and it's going to reflect whatever that is, correct?
>
> A Yes.
>
> Q And the only way for you, as an expert, to distinguish those two is to go into the Windows registry, go into those keys, and look for a time line, essentially, of any changes in the dates and times that were manually done by the user?
>
> A Yes.
>
> Q Did you do that in this case?
>
> A No.
>
> Q So you've got no way of saying to a reasonable degree of certainty that the creation or modification dates and times that you've testified to here were necessarily accurate because you don't know when the computer dates and times may have been manipulated at any given time; is that fair?
>
> A Yes.

*Id.* at 100-101.

9

Put simply, because Ms. Leveille could have but did not do anything to confirm the accuracy of the dates and times of file "creation" and "modification" of the files the Government now seeks to use to create a timeline of sorts for attribution purposes, the Court cannot rely on this evidence to make a finding of guilt beyond a reasonable doubt.

Fourth, the Government's effort to clean up Ms. Leveille's testimony that the Dell laptop was not password protected is improper and not based on the actual evidence before the Court. The Government addresses this issue in footnote 6, in which it seeks to recast Ms. Leveille's testimony as stating that the laptop was indeed password protected and when she said it was not, she was only referring to the forensic image off of which she was working. A review of Ms. Leveille's testimony contradicts that argument:

> Q. Do you recall testifying about this user information from the Dell laptop?
>
> A. Yes.
>
> Q. And I believe your testimony was, if I heard you correctly, that this was a password-protected device.
>
> A. I recall saying that, but right after, I realized that I read it incorrectly. When you're using an E01 image to access your file data, if the password – if there's a password or -- if there's a password that's associated with an account, I don't require the password to enter it to access the data. If I were to just open up the computer and log in, then I would require a password. I did misspeak on this.
>
> **Q. Okay. So just to be clear, this was not a password-protected device?**
>
> **A. Correct.**
>
> **Q. Okay. And so what I asked you earlier about the tablet, which was password-protected, you said multiple users can still access a password-protected device under certain circumstances. It's fair to say that's even more so when you don't have password protection?**
>
> **A. Correct.**

*Id.* at 124-25.

Ms. Leveille clearly testified that the laptop was not password protected, and that this makes it more likely that multiple users could have accessed it than a password-protected device. If the Government sincerely believed this testimony was incorrect or confusing, they had the opportunity to address this issue on redirect. They chose not to do so. Now the Government attempts to improperly change the record on this issue through argument and the conclusions of counsel rather than through the testimony of its expert witness. The Court should not countenance this attempt to expand inaccurately the facts proven at trial.

The reality is that Ms. Leveille's testimony was inconsistent, and at times confusing, not just on the password issue, but in its totality. The Government knows this and therefore is attempting through closing arguments to clean up what was a failed presentation by its forensic expert. But the Court's findings must be based on Ms. Leveille's testimony, including her testimony on cross-examination, and not based on what the Government wishes she had said.

In sum, because the Government failed to attribute the specific Known Images in evidence to Sean McLaughlin beyond a reasonable doubt and to exclude Walter Hodges as the responsible computer user, the Government has failed to prove both the possession and receipt charges beyond all reasonable doubt.

## CONCLUSION

A careful review of the Government's closing arguments reveals a disconnect between its description of the evidence and the actual evidence described to the Court by Ms. Leveille. There is also a vast disparity in the level of self-assuredness and confidence with which the Government describes its "overwhelming" evidence, and the tentative, inconsistent, and often speculative testimony of Ms. Leveille.

Despite the significant resources, time, and effort the Government has dedicated to aggressively prosecuting Sean McLaughlin to the fullest extent possible and on a charge carrying a mandatory minimum of five years in prison, the Government has ultimately failed to prove beyond a reasonable doubt (1) that the Known Images in evidence traveled over the internet, (2) that those Known Images were "received" rather than simply possessed by Sean McLaughlin, (3) that the Dell laptop has any interstate nexus whatsoever, or (4) that the specific Known Images in evidence (not just child pornography files in general) were possessed by Sean McLaughlin to the exclusion of others, including Walter Hodges.

Accordingly, the Government has not met its burden of proof, and the Court should find Sean McLaughlin not guilty of both charges.

Respectfully Submitted,<br>
Sean McLaughlin,<br>
By Counsel

GREENSPUN SHAPIRO PC

BY: _____/s/_____
Peter D. Greenspun
Virginia Bar No. 18052
Muhammad Elsayed
Virginia Bar No. 86151
3955 Chain Bridge Road
Second Floor
Fairfax, Virginia 22030
(703) 352-0100
(703) 591-7268
pdg@greenspunlaw.com
me@greenspunlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2020, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which then sent a notification of such filing (NEF) to the following:

Carina Cuellar, Esq.<br>
Gwendelynn Bills, Esq.<br>
United States Attorney's Office,<br>
Alexandria Division<br>
2100 Jamieson Avenue<br>
Alexandria, Virginia 22314

/s/
Muhammad Elsayed